


40 Broad Street, 7th Floor
New York, New York 10004
Telephone: 212.943.9080
www.vandallp.com

**Jack L. Newhouse**
jnewhouse@vandallp.com

September 25, 2018

**VIA ECF**
Magistrate Judge Cheryl L. Pollak
United States District Court
Eastern District of New York
225 Cadman Plaza East, Rm. N208
Brooklyn, New York 11201

Re: *Ahsanul Islam v. Dynasty VI Food Corp., et al.*
*Docket No.: 18-cv-3469*

Dear Judge Pollak,

This firm is counsel to the Plaintiff in the above-referenced action. Plaintiff respectfully submits this letter motion for approval of the parties' negotiated Settlement Agreement and Mutual General Releases (the "Settlement Agreement"). For the reasons set forth below, the parties represent that the Settlement Agreement is fair and reasonable and is in accordance with the standard set forth by the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

**A. Background**

This action was commenced on June 14, 2018 by Plaintiff, Ahsanul Islam, to recover for alleged unpaid overtime compensation and failure to provide wage statements pursuant to the FLSA and New York State Labor Laws, allegedly owed to the Plaintiff, who performed work at Defendants' grocery store. The settlement negotiations were focused both on substantive defenses to the complaint, as well as financial considerations. Through the diligent efforts of Plaintiff's counsel, the Plaintiff has recovered a significant amount of wages especially given Defendants' defenses and other circumstances explained below. [See Exhibit 1, Settlement Agreement and Releases].

**B. The Settlement Agreement is Fair and Reasonable**

Plaintiff seeks final approval of the Settlement Agreement reached in this case, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc*., 2015 U.S. App. LEXIS 13815 (2d Cir. Aug. 7, 2015) (holding that, "the FLSA falls within the 'applicable federal statute' exception under Rule 41" and therefore, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). In




*Cheeks*, the Second Circuit raised concerns with settlement agreements that contain (1) a battery of highly restrictive confidentiality provisions, (2) overbroad release provisions, and (3) provisions that set attorneys' fees at over 40%. *Cheeks*, 796 F.3d at 206. None of the concerns raised in *Cheeks* are present in this Agreement. The Agreement will be filed publicly with the Court as an exhibit to this motion, contains only a specific release relative to claims arising from Plaintiff's employment with Defendants, does not contain a confidentiality provision and attorneys' fees amount to under 33% of the total settlement amount. The Agreement calls for the stipulated dismissal of this action with prejudice should the Court approve of same. Accordingly, we believe the Agreement is fair and reasonable in all respects under applicable case law and should be approved by the Court.

As articulated in *Wolinksy*, when assessing the fairness of a settlement, a court should consider the totality of circumstances including but not limited to several factors such as: (1) the range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement "is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinksy*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)).

In this case, Plaintiff alleged that he worked approximately 32 hours of overtime each week for the entire statutory period and was not compensated for them at all. Following the commencement of this action, Defendants produced payroll and time records for settlement purposes only. These records refute Plaintiff's allegations as to the number of hours he worked each week and that Plaintiff did not receive any compensation for hours worked over 40 in a week. Accounting for these records, Plaintiff's reasonable range of possible recovery for alleged unpaid overtime compensation is approximately $10,000 to $100,000.

Defendants have vehemently denied several facts in this case. Specifically, Defendants dispute whether Defendants were joint employers, the number of hours worked by Plaintiff each week and the wage paid to paid to Plaintiff for each hour worked. Defendants deny owing Plaintiff any overtime compensation. This Settlement Agreement resolves bona fide disputes and reflects a reasonable compromise over sharply contested facts that led to a resolution of this matter.

After extensive negotiations between counsel well-versed in wage and hour law, the parties were able to arrive at a Settlement Agreement for $53,750.00, whereby Plaintiff will receive $36,012.50, with the remaining $17,737.50 to cover attorneys' fees and costs.

Considering the risks in this case, including Defendants' defenses, Plaintiff's counsel believes that this settlement is a fair result and should thus be approved. Indeed, Plaintiff will be relying heavily on his recollection in order to establish the hours he worked each week. Reliance on Plaintiff's recollection to establish hours worked is risky considering the documentary evidence




in this case supports a finding that Plaintiff worked far fewer hours than he alleges. *See Sampaio v. Boulder Rock Creek Developers, Inc.*, 2007 U.S. Dist. LEXIS 66013, *3 (E.D.N.Y. 2007) (approving settlement where there "is little or no documentation of the hours that plaintiff worked each week, the parties differ widely as to the number of hours that plaintiff actually worked, and the respective burdens the parties face with respect to their claims and defenses."). In this case Defendants produced documentation of hours worked for purposes of settlement.

This settlement also enables the parties to avoid the anticipated burdens and expense of litigation over these issues, especially when the range of possible recovery is potentially less than the attorneys' fees or costs either side may have to expend to pursue their claims (e.g., deposition costs, motion practice, trial etc.). Moreover, at this early stage of the proceedings, Plaintiff is obtaining a recovery without having to go through the time-consuming process of litigating his claims. The third factor set forth above ties in with this sentiment, in that Defendants risk expending thousands upon thousands of dollars in legal fees to defend against a claim where the recovery is limited to the extent it could be in this case, while the Plaintiff avoids the risk of losing his own litigation costs, as well as having to be responsible for Defendants' litigation costs should Defendants ultimately prevail. By settling now rather than litigating, Plaintiff also avoids the risk of any possibility of financial or economic hardship faced by Defendants, leading to the Plaintiff's inability to collect even if he prevails on his claims.

Regarding the fourth and fifth factors, both sides were represented by experienced counsel who practice in the area of employment litigation, and particularly wage and hour litigation. This was a true arm's length negotiation among experienced attorneys that led to a fair and reasonable settlement. Most importantly, the Plaintiff understand the situation, is satisfied with the settlement amount, and voluntarily and willingly entered into the Settlement Agreement.

**C. <u>Plaintiff's Counsel Is Entitled to Reasonable Attorneys' Fees and Costs</u>**

Plaintiff seeks approval of $17,330.56 in attorneys' fees and $406.44 in costs for a total of $17,737.50. The requested fees and costs equal 33% of the total settlement sum in this case.

In considering the reasonableness of a fee award in FLSA cases, the Court must consider the following factors set forth in *Goldberger*: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 53-54 (2d Cir. 2000).

Here, Plaintiff's counsel maintains contemporaneous time records reflecting the tasks performed and the time it took to perform those tasks. Based on these time records, Plaintiff's counsel has devoted 27 hours for a total lodestar of $6,535.00. The work conducted by Plaintiff's counsel in this action includes, but is not limited to the client intake, due diligence on the Plaintiff's claim and five Defendants identified in this matter, drafting the complaint, preparing discovery




requests, analyzing data from Defendants' payroll records, calculating damages, negotiating the settlement of this matter, constant contact with the Plaintiff, drafting the settlement agreement and related documents, and drafting the present motion.

The lodestar cross-check, which compares the requested fee to the time and labor expended by counsel, weighs in favor of approving the requested fee in this matter. Here, Plaintiff's counsel's fees are .31 times its lodestar. This is entirely reasonable considering courts within the Second Circuit have awarded multipliers in excess of a counsel's lodestar. *See, e.g.*, *In re Hi–Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *18 (S.D.N.Y. 2014) (multiplier of 1.41); *In re Visa Check/Master money Antitrust Litig.,* 297 F.Supp.2d 503, 524 (E.D.N.Y. 2003) (multiplier of 3.5); *In re Citigroup Inc. Sec. Litig.*, 965 F.Supp.2d. 369, 401 (S.D.N.Y. 2013) (multiplier of 2.8).

The lodestar cross-check, which compares the requested fee to the time and labor expended by counsel, weighs in favor of approving the requested fee in this matter. Here, Plaintiffs counsel's fees are 2.65 times its lodestar. Courts within the Second Circuit have awarded multipliers in excess of this. *See, e.g., In re Visa Check/Master money Antitrust Litig.,* 297 F.Supp.2d 503, 524 (E.D.N.Y. 2003) (multiplier of 3.5); *In re Citigroup Inc. Sec. Litig.*, 965 F.Supp.2d. 369, 401 (S.D.N.Y. 2013) (multiplier of 2.8). Notably, the requested fee in this case is based on the 33% fee arrangement between Plaintiff and Plaintiff's counsel.

As explained above, the settlement amount Plaintiff will receive is very reasonable given the fact that Defendants produced documents that call into question the number of hours Plaintiff worked and the number of hours Plaintiff was paid for each week. There is a risk that Plaintiff would have received less than what he has accepted in this settlement.

Plaintiff's Counsel also expended $406.44 in out-of-pocket expenses. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted). Here, Plaintiff's Counsel incurred actual expenses of $406.44 for costs such as court fees, service fees, and legal research expenses. These expenses were incidental and necessary to the representation of Plaintiff.

Accordingly, Plaintiff respectfully requests that the fees and costs agreed upon in the attached settlement agreement be approved by the Court.

Respectfully Submitted,

/s/Jack L. Newhouse